UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTONIO RIDINO,
    Plaintiff,


   v.


                                 CIVIL ACTION NO.
                                 10-10700-MBB


SOVEREIGN BANK,
    Defendant.


**MEMORANDUM AND ORDER RE:
DEFENDANT'S MOTION TO ENFORCE SETTLEMENT
(DOCKET ENTRY # 26); PLAINTIFF'S MOTION
TO DECLARE TERMS OF MEDIATION VOID
(DOCKET ENTRY # 27)**


**August 3, 2011**


**BOWLER, U.S.M.J.**

Defendant Sovereign Bank ("defendant") seeks to enforce a settlement agreement with plaintiff Antonio Ridino ("plaintiff"). (Docket Entry # 26). The parties agreed to participate in the court's Alternative Dispute Resolution program. As set forth in the transcript of the February 16, 2011 proceeding, plaintiff and his counsel agreed to the settlement in open court. (Docket Entry # 23). On February 28, 2011, plaintiff filed objections to the settlement agreement. (Docket Entry # 25). On April 1, 2011, plaintiff filed a more detailed motion seeking to declare the terms of the settlement void. (Docket Entry # 27).

PROCEDURAL BACKGROUND

Plaintiff filed this action in Massachusetts Superior Court (Suffolk County) in March 2010. (Docket Entry # 9). In April 2010, defendant filed a timely notice of removal to federal court on the basis of diversity jurisdiction. (Docket Entry # 1). Plaintiff seeks damages for: breach of contract of a mortgage (Count I); defendant's negligence that damaged plaintiff's credit (Count II); emotional distress caused by defendant's misconduct (Count III); and defendant's violation of Massachusetts General Law Chapter 93A (Count V). (Docket Entry # 9). Plaintiff also seeks a preliminary injunction to prevent defendant from assessing late fees when plaintiff paid the amount that he believed was due (Count IV).

The case was referred for Alternative Dispute Resolution on October 28, 2010. (Docket Entry # 14). The matter was assigned to a magistrate judge and the mediation took place on February 16, 2011. After a successful mediation, a settlement was reached. (Docket Entry # 21). The terms were recorded in open court and a transcript was prepared. (Docket Entry # 23).

STANDARD OF REVIEW

If one side refuses to honor the terms of a valid settlement before a case is dismissed, the nonbreaching party may file a motion to enforce the settlement. See Fidelity & Guaranty Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 5 (1st Cir. 2008). If

there is no dispute of material fact relating to the existence or material terms of the settlement, then the court may summarily enforce the agreement. <u>See</u> <u>Bistany v. PNC Bank, NA</u>, 585 F.Supp.2d 179, 182 (D.Mass. 2008). "When a genuinely disputed question of material fact does exist, the court should hold a hearing and resolve the contested factual issues." <u>See</u> <u>Fidelity & Guaranty Ins. Co. v. Star Equip. Corp.</u>, 541 F.3d at 5. As set out below, there is no material factual dispute regarding the existence of the material terms of the settlement.

FACTUAL BACKGROUND

In order to raise capital to develop a water purification system, plaintiff applied for and received a mortgage from Compass Bank on his property in East Falmouth ("the property"). (Docket Entry # 9, Complaint, ¶ 7; Docket Entry # 7, ¶ 7). The loan had a fixed interest rate and repayment term of 15 years. (Docket Entry # 9, Complaint, ¶ 8, Docket Entry # 7, ¶ 8). Defendant later acquired Compass Bank and assumed the loan; however, the terms and payment policies remained the same. (Docket Entry # 9, Complaint, ¶ 10, Docket Entry # 7, ¶ 10).

In 2008, defendant informed plaintiff that it had not received proof of insurance on the property. (Docket Entry # 9, Complaint, ¶ 13; Docket Entry # 7, ¶ 13). In 2009, defendant obtained a policy for the property and raised plaintiff's monthly bill to cover the expense. (Docket Entry # 9, Complaint ¶ 17;

x

x

x

3

Docket Entry # 7, ¶ 17).  The dispute continued for the next two years, culminating on December 7, 2009, when defendant sent plaintiff a letter stating that he was in default and that continued nonpayment could lead to foreclosure.  (Docket Entry # 27, Ex. C).

At the request of the parties, the case was referred for Alternative Dispute Resolution on October 28, 2010.  (Docket Entry # 14).  On February 16, 2011, a mediation occurred between plaintiff and defendant before a magistrate judge.  Plaintiff was represented by his counsel of record.[1]  (Docket Entry # 26, p. 7).

A settlement was reached that was agreed to by all parties, including both plaintiff and his counsel of record.  (Docket Entry # 23).  The settlement was agreed to in open court and included the following terms:  the mortgage would be rewritten in a loan modification with a fixed interest rate of 4% for the 15 year term of the loan; plaintiff would complete the requisite loan modification paperwork; defendant would pay plaintiff $5,000 in attorney's fees; and defendant would provide a letter on its stationery stating that the loan modification was not due to any

---

[1] According to defendant, another attorney was also present on plaintiff's behalf.  Whether or not there was an additional attorney present however is not material to the resolution of the pending motions and, in any event, is resolved in plaintiff's favor.

lack of ability to pay on the part of plaintiff.  (Docket Entry #

23).  The transcript reads as follows:

> [Defense counsel]:  The mortgage loan for the property in
> East Falmouth and the outstanding balance will be rewritten
> in a loan modification refinance.  There will be no closing
> costs to the borrower associated with that.
>
> The new loan terms are as follows:  there will be a fixed
> interest rate of four percent for the life of the loan.
> There will be a 15 year amortization period.  The
> modification will be rewritten at the principle [sic]
> balance outstanding at the time of modification . . .
>
> The terms of the settlement and the loan modification
> refinancing are subject to underwriting review and those
> loan modification criteria that Sovereign Bank has for this
> type of settlement, and in order for Sovereign to undertake
> that review, the plaintiff will need to fill out and
> complete and sign a loan modification application that I
> will provide to plaintiff's counsel, and that may include
> backup information, as called for in the application
> document.
>
> The bank has agreed to make a payment to reimburse
> attorney's fees to the plaintiff in the amount of $5,000,
> and the bank, Sovereign Bank, has also agreed to provide a
> letter on its letterhead that is a letter of explanation
> regarding any late reporting that it made on the plaintiff's
> mortgage account, and will also address the loan
> modification status of this loan, if desired by the
> plaintiff.
>
> The Court:  Just to expand on that a little bit, the letter
> will provide a mutually-agreeable language that the
> reporting of late payments was not due to the failure of the
> plaintiff to make timely payments, it was because
> information crossed in the mail or some other mutually-
> agreeable explanation.  The letter will provide that it can
> be used by the plaintiff for any purpose, and that the loan
> modification was made to resolve the dispute, not due to any
> lack of ability to pay . . .
>
> The Court:  Mr. Ridino, do you agree with the terms of the
> settlement? . . .

> Plaintiff:  Yes, your Honor
>
> The Court:  All right.  And counsel?
>
> [Plaintiff's counsel]:  Yes.  On behalf of Mr. Ridino, I
> also agree with the terms of the settlement, and I'll work
> with Attorney Kennedy to effectuate the settlement agreement
> and file the stipulation of dismissal in due coursel

(Docket Entry # 23).  On February 16, 2011, the magistrate judge
entered a Report of Alternative Dispute Resolution Provider
checking the appropriate box that a settlement had been reached.
(Docket Entry # 21).

On February 28, 2011, plaintiff filed the aforementioned
objections to the settlement pro se.  (Docket Entry # 25).  On
the same date, plaintiff's counsel of record filed a notice of
withdrawal.  (Docket Entry # 22).  On March 29, 2011, defendant
filed the motion to enforce the settlement agreement.  (Docket
Entry # 26).  On April 1, 2011, plaintiff filed the motion to
void the terms of the settlement.  (Docket Entry # 27).
Defendant filed an opposition to plaintiff's motion on April 14,
2011.  (Docket Entry # 30).  Plaintiff filed a pro se opposition
to defendant's opposition on May 4, 2011.  On May 5, 2011, this
court held a hearing and took the motions (Docket Entry ## 26 and
27) under advisement.

DISCUSSION

I.  Law Governing Settlement Agreements

    Public policy favors the enforcement of settlement
agreements to avoid the time and cost associated with litigation.
See Bistany v. PNC Bank, NA, 585 F.Supp.2d at 182.  "An
enforceable settlement agreement arises in Massachusetts when all
of the parties to be bound mutually assent to all material terms,
even if those terms are not memorialized in a final writing."
Id.  While it is conceivable that a settlement might be against
public policy and therefore unenforceable, cases where it might
occur are rare.  See Bandera v. City of Quincy, 344 F.3d 47, 52
(1st Cir. 2003) (stating public policy exceptions rare but
conceivable); see, e.g., EEOC v. Astra USA, 94 F.3d 738, 744-45
(1st Cir. 1996) (clause barring the plaintiffs from assisting
EEOC in sexual harassment case unenforceable due to public
policy).  Agreements may also be unenforceable if the settlement
was entered into under coercion or where the authority of the
attorney to enter into the agreement is disputed.  See Bistany v.
PNC Bank, NA, 585 F.Supp.2d at 182.

    "Settlement agreements enjoy great favor with the courts as
a preferred alternative to costly, time-consuming litigation."
Fidelity & Guaranty Ins. Co. v. Star Equip. Corp., 541 F.3d at 5.
Absent coercion or a lack of authority on the part of the
attorney to act on his client's behalf, "[a]n enforceable

settlement agreement arises in Massachusetts when all of the parties to be bound mutually assent to all material terms, even if those terms are not memorialized in a final writing." Bistany v. PNC Bank, NA, 585 F.Supp.2d at 182.

II.  Enforceability of the February 16, 2011 Agreement

Defendant seeks to have the terms of the February 16, 2011 settlement agreement enforced while plaintiff seeks to have the settlement voided.  Throughout the mediation, plaintiff was represented by counsel.  (Docket Entry # 26, p. 7).  The material terms of the settlement, including the 4% fixed interest rate, the 15 year term and the safeguards designed to protect plaintiff's creditworthiness were agreed to by both plaintiff and plaintiff's counsel in open court.  (Docket Entry # 23).

Plaintiff nevertheless alleges that his representation at the mediation was inadequate because his attorney did not object to the terms of the settlement.  (Docket Entry # 27, 3).  Where a party, directly or indirectly through an authorized attorney, enters into a settlement voluntarily, he cannot attack the integrity of the settlement.  In re Mal de Mer Fisheries, 884 F. Supp. 635, 640 (D.Mass. 1995).  Therefore, even if the representation were inadequate, which there is no evidence that it was, it would not void the settlement because plaintiff entered into it voluntarily.

Plaintiff also suggests that both his attorney and defendant's attorney misled him about the loan modification. (Docket Entry # 32, p. 2). There is no evidence that either attorney intentionally or negligently misled plaintiff; rather, it appears that plaintiff is misinformed. Plaintiff believes that loan modifications are only available for borrowers in financial distress and therefore create a negative impression on his creditworthiness. (Docket Entry # 25, p. 3). To support this assertion, plaintiff points to recent media coverage of loan modifications and by the standardized form that he received from defendant. (Docket Entry # 32, pp. 1-2).

Plaintiff's concern that receiving a loan modification will negatively impact his credit however is misguided.[2] Defendant simply requires the completed application to satisfy its own regulatory and audit requirements. (Docket Entry # 26, p. 7). In accordance with defendant's instructions, plaintiff can indicate on the application that the modification is due to a settlement as opposed to plaintiff's inability to pay, thus negating any negative impression engendered by the application for the loan modification. (Docket Entry # 26, p. 7). Furthermore, defendant will provide a letter on its stationery stating that the loan modification was made to resolve a dispute,

---

[2] The concern of any negative impact does not provide a means to void the settlement. Plaintiff, represented by counsel, and defendant agreed to all material terms.

not due to a lack of ability to pay.  (Docket Entry # 26, Ex. A, pp. 3-4).

Plaintiff next advances several arguments related to his dissatisfaction with the terms of the settlement, including his history of disputes with defendant, the lack of financial benefit due to the lowering of the interest rate and the lack of full compensation for attorney's fees.  (Docket Entry # 27, pp. 3, 5-7).  Where, as here, the parties have agreed to all material terms and there is no dispute of material fact, then under Massachusetts law, there is an enforceable settlement.  <u>Bisany v. PNC Bank, NA</u>, 585 F.Supp.2d at 182.  As plaintiff voluntarily entered into the material terms of the settlement, he is bound by its terms.

CONCLUSION

In accordance with the forgoing discussion, the motion to enforce the settlement terms filed by the defendant (Docket Entry # 26) is **ALLOWED** and the motion to void the settlement filed by the plaintiff (Docket Entry # 27) is **DENIED.**

  /s/ Marianne B. Bowler    

**MARIANNE B. BOWLER**
United States Magistrate Judge